# EXHIBIT "C"

Case 1:06-cv-00735-MCW Document 1-1 Filed 10/27/2006 Page 10 of 18

DEPARTMENT OF THE NAVY
NAVAL FACILITIES ENGINEERING COMMAND SOUTHWEST
1220 PACIFIC HIGHWAY
SAN DIEGO, CA 92132-5190

RECEIVED
APR 18 2006
4433.7
PERKINS & MILTNER

4200.1.b(1)(c)
Ser AQA.KS/2489
April 17, 2006

**FINAL DECISION NAVFAC SOUTHWEST #06-05**

CERTIFIED MAIL – RETURN RECEIPT REQUESTED
7004 1160 0007 3747 7628

W. R. Chavez Construction, Inc.
12125 Kear Place, Suite C
Poway, CA 92064

Subject: CONTRACT N68711-99-D-6203, TASK ORDER 0007, P-216, COMNAVSPECWARCOM, HEADQUARTERS ADDITION, NAVAL AMPHIBIOUS BASE, CORONADO, CALIFORNIA

This final decision is in response to W.R. Chavez Construction's ("Chavez") submission of a certified claim, by letter dated June 28, 2004, and received by the Navy on July 13, 2004. The claim seeks a contract price adjustment in the amount of $155,102.29, which is based primarily upon the element of your claim that seeks a compensable time extension of 90 days. It is our understanding of your claim that Chavez contends it is entitled to be paid for the following five issues:

1. Temporary AC Units for LAN Room #132 - $17,000.00. Chavez contends the government directed it to provide temporary AC units to maintain the Local Area Network (LAN) room operations during construction (Field Work Directive #030) which, Chavez contends was a constructive change to the contract for which it was not compensated.
2. 90 Days Extended Overhead - $44,370.00. Chavez contends the government delayed the project by 90 calendar days due to early owner occupancy, PC#55 "extended general conditions" and other modifications caused by the Government.
3. Install GFE in Galley and Remove/Replace Lavatory - $2,417.00. Chavez contends the government required them to install Government Furnished Equipment (GFE) in the galley, which it contends was not part of the contract scope and to replace a broken lavatory in the men's restroom, which it maintains was damaged by government personnel.
4. Repaint Walls Damaged by Government's Furniture Installers - $4,017.00. Chavez contends that painting rework was required due to damage to walls and doors caused by the government's furniture installers (under a separate contract).

Subject: CONTRACT N68711-99-D-6203, TASK ORDER 0007, P-216 COMNAVSPECWARCOM, NAVAL AMPHIBIOUS BASE, CORONADO, CALIFORNIA

5. Unpaid Contract Balance of $87,298.29. ($73,750.00 + $13,548.29). Chavez contends the government's withholding of $73,750.00 in potential liquidated damages should be released based on their claim of a 90-day time extension. Chavez also contends the remaining contract balance of $13,548.29 is not disputed by the government and should also be released.

After careful review of the claim package, the contract files, pertinent contract clauses, provisions, specifications and drawings, I make the following findings of fact.

## FINDINGS OF FACT

1. Chavez was awarded Contract N68711-99-D-6203, a Solution Order Concept (SOC) contract on March 31, 1999 by the Camp Pendleton Area Focus Team (AFT), Southwest Division, Naval Facilities Engineering Command San Diego, California. The contract is a firm fixed price Indefinite Delivery Indefinite Quantity (IDIQ), Small Business Set-Aside contract for construction and design-build for new construction, renovation, alterations and repairs.

2. Solicitation N68711-99-D-6202/6203/6204/6210, PTO 42, was issued on July 17, 2000 with a base bid item and three option items. The base bid item is for construction of an addition of approximately 24,000 SF to a 2-story administrative structure, Building 624, including offices and supporting spaces for personnel and associated automatic data processing equipment, and associated storage facilities, along with the renovation/improvements of approximately 13,300 SF to Building 624 at Naval Amphibious Base, Coronado, California. Other major work includes revised parking and drainage to the southeast of the existing building for an additional 20 parking spaces. Option 1 provides a new parking lot, including landscape and irrigation, in the existing sand area to the south of the new addition, for an additional 24 parking spaces. Option 2 provides for the revision of the existing parking lot, including landscape and irrigation, to the northeast of the existing building, for an additional 47 parking spaces. Option 3 provides landscape and irrigation for the base bid area as indicated.

3. The Southbay AFT awarded Task Order 0007, PTO 42, to Chavez on August 31, 2000 in the amount of $3,801,245.00, which included the base bid and all three option items. The period of performance for the task order was September 15, 2000 through December 19, 2001. A total of 21 modifications were issued which increased the contract amount by $983,406.00 to a new total of $4,784,651.00 and extended the task order completion date to June 24, 2002.

4. The ROICC established the project's Beneficial Occupancy Date (BOD) as July 20, 2002. The customer moved into the spaces over the weekend of Saturday, July 20, 2002.

Temporary A/C Units for LAN Room #132

5. Specification Section 01140, page 1, Work Restrictions, Part 1 General, 1.1 Special Scheduling Requirements states in part, "... c. Portions of the building will remain in operation during the entire construction period. The contractor shall conduct his operations so as to cause the least possible interference with normal operations of the activity...

Subject: CONTRACT N68711-99-D-6203, TASK ORDER 0007, P-216 COMNAVSPECWARCOM, NAVAL AMPHIBIOUS BASE, CORONADO, CALIFORNIA

... e. The work under this contract requires special attention to the scheduling and conduct of the work in connection with existing operations. Identify on the construction schedule each factor which constitutes a potential interruption to operations."

6. Bilateral Modification 0007-18, executed on May 6, 2002 (PCO #000029), states in part, "... The contractor shall provide all labor, material, equipment and supervision necessary to provide and install LAN Room HVAC system upgrades and UPS/ Connectivity Changes for (350 KW) generator; in accordance with revised drawings/ sheets: S-9, S-10, S-14, M-2, M-3, M-4, M-7, M-8A, M-8B, M-9A, M-9B, M-10A, M-10B, M-12, M-13, M-14, P-5, P-6, P-7, ER-3, E-2, E-11, E-12, E-15, E-20, and E-21R (dated Dec 4, 2001). ... the total delivery order price is hereby INCREASED by $332,188.00 ... The delivery order period of performance is hereby extended by 30 calendar days ..." The modification contains standard release language. Chavez signed the modification one week after negotiations and it was executed by the government the following week.

7. Chavez unsolicited proposal dated August 16, 2002 for PC #56 Temporary AC units for LAN room #132 states in part, "The units required by PC #29 could not be ordered until modification #29 [sic] was approved. This change order is written to recoup the money and time spent cooling the area and procuring the previous change order" Page 2 of the proposal is a spreadsheet representing the rental fee cost per unit for two 5-ton portable A/C units.

<u>90 Days Extended Overhead</u>

8. A total of twenty-one modifications were issued under the subject task order during the contract period of performance. The contract price was increased by a total of $983,406.00 and the performance period was increased by a total of 187 days from December 19, 2001 to June 24, 2002. The BOD was established as July 20, 2002 based on the owner's move-in date. All bilateral modifications included a Contractor's Statement of Release, which states, "Acceptance of this modification by the contractor constitutes an accord and satisfaction and represents payment in full for both time and money and for any and all costs, impact effect, and for delays and disruptions arising out of, or incidental to, the work as herein revised."

9. Solution Order Concept Contract – Task Order Scope of Work and General Conditions, page 4, paragraph 14. Liquidated Damages states in part, "(a) If the Contractor fails to complete the work within the time specified in the task order, or any extension, the Contractor shall pay to the Government as liquidated damages, the sum of $2,950.00, for each day of delay."

10. Specification Section 01321, Network Analysis Schedule (NAS), page 12, paragraph 1.8, Contract Modification states in part, "When a contract modification to the work is required, submit proposed revisions to the network reflecting the proposed change impact." Paragraph 1.8.1, Time Impact Analysis, states in part, "Time Impact Analysis shall be used by the Contracting Officer in determining if a time extension or reduction to the contract milestone date(s) is justified. The Contractor shall provide a Time Impact Analysis to the Contracting Officer for any proposed contract change or as support for a Value Engineering Proposal, Claim or Request for Equitable Adjustment. ..."

Subject: CONTRACT N68711-99-D-6203, TASK ORDER 0007, P-216 COMNAVSPECWARCOM, NAVAL AMPHIBIOUS BASE, CORONADO, CALIFORNIA

11. Chavez' letter dated July 16, 2002 to Gould Electric, Inc. states in part, "I am VERY concerned about the lack of manpower on this project. Three days from now the Navy will be moving furniture into the building and on monday, [sic] July 22nd they (the Navy) is [sic] planning to move their people into the building also. This will not be possible without the following items being completed: 1) A/C units on roof wired and operational. ... 4) All F/A devices need to be installed and operational. ..."

12. Chavez' letter dated July 17, 2002 to Dan Bridgett, Southwest Division Fire Protection Engineering Branch, requested a preliminary inspection of the fire protection system installed to date to support the customer's move-in date of July 20, 2002. The letter also affirms Chavez' commitment to complete all work necessary to assure the safety of the personnel and property according to minimum acceptable standards while the work is still in progress.

13. Chavez' letter dated July 17, 2002, Serial No. 0197, to LCDR Autry, ROICC Coronado, states in part, "Here is a summary of men that will be on site tomorrow: 1) Three painters to complete doors, patchs [sic] and touch-up ... 4) Four electricians to make up HVAC, lighting and trim out. 5) Two F/A technicians to complete phone system and F/A system.6) Two HVAC technicians to perform start up and complete duct work. ... 8) One tile setter to complete grouting in bathroom. ... 10) One bath partition installer for accessories and partitions. At the end of the day the project will have A/C and lighting and the telephone work will be close to complete. ... Please feel free to check on progress during the day tomorrow."

14. Government e-mail, dated Friday, July 19, 2002 5:31 PM, from LCDR Autry, ROICC Coronado, to Kenneth Butrym, Executive Officer, Southwest Division states in part, "Work will continue over the weekend to rap [sic] up a few items including HVAC, finish electrical, & telephones . . .Captain Harms is very satisfied with the completion of the critical items and there is no impact to their move-in over the weekend and regular operations on Monday. Contractor is scheduled to be 100% complete on all remaining items by 7/31, two days prior to their CoC [Change of Command Ceremony]."

15. Government e-mail, dated Monday, July 22, 2002 9:39 AM, from ENS Suarez, AROICC Coronado, to Kenneth Butrym, Executive Officer, Southwest Division, states in part, "Progress was made this weekend on the HVAC, telephones, electrical and fire alarm systems. The PW Fire Alarm Inspector arrived on site at 0735 and conducted the fire alarm pre-inspection with success. ... This morning at 1000, there will be a preliminary walk-thru [sic] for punch-list items."

16. ROICC letter Ser 5SC0.CS/3463 dated July 26, 2002 states in part, "Please note that the items listed below are critical work items that need to be addressed at this time:
CARPET There are areas in the building missing carpet that need to be in place by COB 31 July 2002. There are also areas in the building that have a dye lot issue and a possible improper installation issue ...
CEILING There are currently 5 rooms in the building that need to have ceiling grid and tiles installed. Delay in the installation is causing delay in furniture delivery to those rooms affected. ...

Subject: CONTRACT N68711-99-D-6203, TASK ORDER 0007, P-216 COMNAVSPECWARCOM, NAVAL AMPHIBIOUS BASE, CORONADO, CALIFORNIA

STAIN/SEAL The staining and sealing of the exterior masonry was promised to begin on 23 July and work to this date has not begun. …
GALLEY … Work in this room needs to be complete and all components functional by COB 31 July. This was a modification to the contract executed on 15 March 2002. …
Other items, though not as critical, still need to have resolution … miscellaneous punch-list items noted in walk-thru [sic] of 22 July, broken sink in 2nd floor men's restroom …"

17. ROICC letter 5S02.DK dated July 29, 2002 states in part, "This letter is forwarded as a follow up to our letter dated 26 July 2002 and our telephone conversation of 29 July 2002. You are reminded that there is a Change of Command ceremony to be held Friday, 2 August 2002 at COMNAVSPECWARCOM. It is imperative that you coordinate with your team to work out your plan of action and milestones necessary to complete the four (4) critical work items indicated in our correspondence dated 26 July 2002. Those items include: carpet, ceiling, stain/seal and galley. Please be advised that your contract is behind schedule. … Please be advised that the Government fully intends to assess, Liquidated Damages and will notify the Small Business Administration of your delinquent performance and failure to complete … within the contract schedule …" A copy of the letter was forwarded to Chavez' bonding company.

Install GFE in Galley and Remove/Replace Lavatory

18. Bilateral Modification 0007-17, dated March 18,. 2002, PCO #000026: states, "The contractor shall provide all labor, material, equipment, and supervision necessary to perform the scope of work specified in sheets 1 through 10, dated August 1, 2001 and Electrical sheets E-12, E-15, E-21 AND E-22. Scope [sic] work shall also include the addition of locking door hardware to RM-228 door." The modification contains standard release language.

19. FAR Clause 52.246.12, Inspection of Construction (AUG 1996) states in part, "… (c) Government inspections and tests are for the sole benefit of the Government and do not----" ... (2) Relieve the Contractor of responsibility for damage to or loss of the material before acceptance; ..."

20. FAR Clause 52.236-7 -- Permits and Responsibilities (Nov 1991) states in part, "… The Contractor shall also be responsible for all damages to persons or property that occur as a result of the Contractor's fault or negligence. The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract. …"

21. ROICC letter Ser 5SC2.EM/3603 dated December 16, 2002, addressed Chavez' unsolicited proposal for PCO#000058 dated November 13, 2002 and denied entitlement for additional costs relating to the installation of GFE in the galley based on the work being included in bilateral Modification 0007-17, PCO #000026. The letter also denied entitlement for the cost of replacing the broken lavatory in the men's restroom based on Chavez' subcontractor being responsible for the damage while installing the toilet partitions.

Subject: CONTRACT N68711-99-D-6203, TASK ORDER 0007, P-216 COMNAVSPECWARCOM, NAVAL AMPHIBIOUS BASE, CORONADO, CALIFORNIA

Repaint Walls Damaged by Government's Furniture Installers

22. Chavez unsolicited proposal, dated October 14, 2002 for COR #1 Repaint walls damaged by the Owners movers Perron [sic] Hall included back-up time and material sheets that acknowledged excessive trade damage and listed various Chavez subcontractors as the alleged perpetrators. The listing also included the government's furniture installers, Parron Hall. The time & material extra work authorizations are dated July 18, 29, 30, and 31, 2002.

Unpaid Contract Balance

23. FAR Clause 52.232-5, Payments Under Fixed-Price Construction Contracts (May 1997) states in part, "… (h) Final payment. The Government shall pay the amount due the Contractor under this contract after-
(1) Completion and acceptance of all work; …
(3) Presentation of release of all claims against the Government … other than claims, in stated amounts, that the Contractor has specifically excepted from the operation of the release. ..."

24. Specification Section 01200, Price and Payment Procedures, page 3, paragraph 1.6.1, Obligation of Government Payments states in part, "The obligation of the Government to make payments required under the provisions of this contract will, at the discretion of the Contracting Officer, be subject to reductions and/or suspensions permitted under the FAR and agency regulations including the following in accordance with "FAR 32.503-6: … b. Claims which the Government may have against the Contractor under or in connection with this contract; ..."

DISCUSSION

Temporary A/C Units for LAN Room #132

Chavez contends that the temporary AC units to maintain LAN room operations during construction were not included in the original scope of work and seeks compensation. The contract specification clearly indicated that the building would remain in operation during the entire construction period and that the contractor shall conduct his operations so as to cause the least possible interference with normal operations. Temporary A/C units were necessary to keep the computer room functioning within normal operations and were addressed by Modification 0007-18. Without the temporary A/C units, the computer equipment would be subjected to increased operating temperatures, which have the potential to cause loss of data and possible equipment damage and/or failure. Contract Modification 0007-18 included the costs of labor, materials and equipment for the LAN room upgrade and included a contractor's statement of release. The parties mutually agreed on the stated contract price and time extension as complete equitable adjustment for the work. Three months after the modification was signed, the contractor submitted an unsolicited proposal to recoup additional costs to rent the temporary A/C units and costs to procure a previous change order. A fixed price contract provides for a price that is not subject to recovery of costs on the basis of the contractor's cost experience in performing the contract. Considering these facts the Government finds that this claim issue has no merit.

Subject: CONTRACT N68711-99-D-6203, TASK ORDER 0007, P-216 COMNAVSPECWARCOM, NAVAL AMPHIBIOUS BASE, CORONADO, CALIFORNIA

90 Days Extended Overhead

Chavez contends the project was delayed approximately 90 calendar days due to miscellaneous project events and other modifications and seeks compensation for overhead costs during the delay. For all contract modifications, which increased the period of performance, the parties mutually agreed on the stated contract prices and time extensions as complete equitable adjustment for the work. Additionally, all bilateral modifications included a "Contractor's Statement of Release" releasing the Government from all costs arising out of the work stated in the modification. Considering these facts the Government finds that this claim issue has no merit.

Install GFE in Galley and Remove/Replace Lavatory

Based on Chavez' claim letter, it is my understanding that Chavez is requesting a total of $2,417.00 for both installing GFE in the Galley, and removing/replacing the lavatory in the men's restroom. Contract Modification 0007-17, PCO#000026, included the labor, materials and equipment for the installation of GFE in the galley. The parties mutually agreed on the stated contract prices and time extension as complete equitable adjustment for the work. Additionally, Modification 0007-17 included a "Contractor's Statement of Release" releasing the Government from all costs arising out of the work stated in the modification. Considering these facts, the Government finds that this claim issue has no merit.

The Government took occupancy of the building on July 20, 2002 and the lavatory was found to be broken. Chavez was notified of the broken lavatory at the pre-final walk through on July 22, 2002 and again a week later through correspondence from the government. It is my understanding that Chavez denies responsibility for breaking the lavatory, and contends that the Government should bear the cost of replacement. Chavez has the burden of proof regarding its claim. It must provide sufficient evidence to support its allegations. For this particular claim element Chavez has not provided any convincing evidence that supports its contention that the Government is responsible for the damage. The risk of loss prior to acceptance resides with the Contractor. As such, it remains the Contractor's responsibility to remedy, at the Contractor's expense, any damage to its work. Considering these facts, the Government finds that this claim issue has no merit.

Repaint Walls Damaged by Government's Furniture Installers

Chavez is requesting compensation for repainting walls that it contends were damaged by Government furniture installers. Chavez was behind schedule and had critical items that needed to be completed by July 31, 2002. In order to complete the project including the critical items, Chavez had multiple trades working simultaneously at the same time the Navy was moving furniture into the building. Chavez' allegation that the damage was caused by the government furniture installers is not substantiated. Chavez has the burden of proof regarding its claim. It must provide sufficient evidence to support its allegations. For this particular claim element, Chavez has not provided any convincing evidence that supports its contention that the

government is responsible for the damage. Considering these facts, the government finds that this issue has no merit.

Unpaid Contract Balance

The contract has a remaining balance of $87,298.29, which consists of a liquidated damages assessment totaling $73,750 leaving an unpaid balance of $13,548.29. Chavez was notified that he was behind schedule and that the government intended to assess liquidated damages. The government notified Chavez that there were several outstanding critical items (carpet, ceiling, stain/seal, and galley) that needed addressing prior to owner move in. Chavez by his own admission, in a letter to his subcontractor, was concerned with completing the tasks prior to the Navy's move in date. Chavez was 25 days late in completing the project and was assessed liquidated damages as provided under the contract. Chavez did not provide convincing evidence to support a time extension to the contract. Considering these facts, the government finds that the requested release of liquidated damages has no merit.

After subtracting the assessed liquidated damages, the contract balance remaining is $13,548.29. Considering that there is no basis to continue to retain this sum, the government finds Chavez is entitled to payment in this amount plus any allowable interest. Chavez may invoice the government for an amount consistent with this finding.